J-A16004-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN PAUL GOMEZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEYSHA L. GOMEZ | : | No. 1600 WDA 2025 |

Appeal from the Order Entered December 8, 2025
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD-20-000355-007

BEFORE:  McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: August 14, 2026**

John Paul Gomez ("Husband") appeals from the order entered dismissing his petition under the Protection from Abuse Act ("PFA") against his wife, Keysha L. Gomez ("Wife"). He challenges the admission of evidence, the dismissal of the petition, and the trial court's denial of his motion to supplement the hearing transcript. We affirm.

The trial court aptly summarized the history of this case as follows:

> By way of background, prior to the subject litigation, the parties filed two (2) cross-Petitions for Protection from Abuse against each other, first in March 2020, and again in July 2025. Of note, the July 2025 PFA petitions were resolved by Consent Agreements dated September 25, 2025.
>
> On November 21, 2025, [Husband] filed his third PFA Petition against [Wife]. In his Petition, [Husband] averred that he was in a Zoom meeting with his work leader when [Wife] walked into the room while she was on the phone. According to [Husband], [Wife] began recording him while

she was on the phone, and [Husband] himself then began to record [Wife]. [Husband] left the house to "deescalate." When he returned, [Wife] allegedly came out of the house and blocked him from going into his daughter's room to get some of his belongings. [Husband] also averred that on October 2[1], 2025, [Wife] backed up her vehicle "aggressively" towards him and locked him out of the home, called him crazy and made false statements about him to their three (3) minor children.

Judge Alyssa Cowan issued a Temporary PFA Order on November 21, 2025. This Order excluded [Wife] from the residence and granted primary physical custody of the Children to [Husband]. [Wife] was ordered to have partial custody at the dates, times, and circumstances listed by [Husband], and the children could initiate telephone calls to [Wife].

Pa.R.A.P. 1925(a) Opinion ("Rule 1925(a) Op."), filed 1/8/26, at 2-3.

At the final PFA hearing, on December 3, 2025, Husband appeared *pro se* and Wife was represented by counsel. Husband testified similarly to the allegations of his PFA petition. Husband also testified about an incident that occurred while he was in the bathroom of the parties' marital residence. He explained that while he was showering, Wife came into the bathroom and would not let him exit the bathroom. N.T., Final PFA Hearing, 12/3/25, at 44-45. Husband testified that he called 911 and recorded the incident on his cell phone. *Id.* The parties stipulated that Husband called 911 on the day of the incident and Husband moved to admit the 911 recording and a cell phone video recording of the incident. The court excluded both pieces of evidence, finding that the video was inadmissible under the Wiretapping Electronic Surveillance Control Act ("Wiretap Act") and the 911 recording was inadmissible hearsay.

At the conclusion of the hearing, Wife's counsel argued that Husband failed to meet the burden of proof for a PFA petition and asked the court to dismiss the petition. *See id.* at 81-82. The court dismissed the petition, finding that Husband "failed to establish sufficient evidence" under the PFA. *See* Protection from Abuse Dismissal Order, filed 12/8/25. This timely appeal followed. *See* Notice of Appeal, filed 12/5/25.

The court ordered Husband to file a Statement of Matters Complained of on Appeal and Husband complied. *See* Statement of Errors Complained of on Appeal ("Rule 1925(b) Statement"), filed 1/2/26.[1] Husband also filed a Motion to Correct and Supplement the Transcript Pursuant to Pa.R.A.P. 1926. He alleged that the transcript omitted numerous comments by the trial court. *See* Motion to Correct and Supplement the Transcript Pursuant to Pa.R.A.P. 1926, filed 1/2/26. The court denied the motion. *See* Order, filed 1/28/26.

Husband raises the following questions on appeal:

> 1. Due Process: Whether the trial court violated [Husband's] right to procedural due process by prematurely closing his testimony, constraining relevant evidence, and requiring cross-examination before he completed his case-in-chief.
>
> 2. Evidentiary Exclusion: Whether the trial court erred in excluding corroborating contemporaneous video and 911 call recordings, thereby materially impairing [Husband's] ability to establish abuse under the PFA Act and depriving the appellate court of a complete record.

---

[1] Although not in the certified record, Husband's Rule 1925(b) statement is in the reproduced record. Since there is no dispute about the accuracy of the copy in the reproduced record, we consider it. *See Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa.Super. 2019) (*en banc*).

3. Dismissal Based on Court-Created Gaps: Whether the trial court erred in dismissing [Husband's] PFA petition based on evidentiary gaps it created, resulting in inequitable outcomes favoring [Wife] regarding custody and possession of the marital residence.

4. Record Integrity: Whether the trial court erred by failing to rule on [Husband's] motions under Pa.R.A.P. 1926, leaving unresolved questions regarding the accuracy, completeness, and sealing of the record for appellate review.

Husband's Br. at 10-11 (emphasis removed).

We review the denial of a PFA petition for an abuse of discretion. *See Kaur v. Singh*, 259 A.3d 505, 509 (Pa.Super. 2021). An abuse of discretion occurs "where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." *Id.* (citation omitted). We "review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court." *Goldner on Behalf of K.M. v. Manigault*, 345 A.3d 1212, 1216 (Pa.Super. 2025) (citation omitted).

In his first issue, Husband alleges that the trial court violated his right to procedural due process. "In determining whether procedural due process violations have occurred, our standard of review is *de novo* and our scope of review is plenary." *Int of K.L.*, 286 A.3d 1267, 1271 (Pa.Super. 2022). Procedural due process entails "adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Commonwealth v. Turner*, 80 A.3d 754, 764 (Pa. 2013). When a party claims a deprivation of procedural due process, we

first determine if "there is a life, liberty, or property interest that the state has interfered with[.]" *Id.* We then ask "whether the procedures attendant to that deprivation were constitutionally sufficient." *Id.*

Husband claims the court "interrupted [his] testimony and directed cross[-]examination to begin before [he] had completed his presentation of evidence." Husband's Br. at 19. He quotes the following portions of the transcript:

> [Husband]: "Your Honor, I didn't - -"
>
> The Court: "No. I'm in the middle of asking a question of counsel so if you can allow me to finish that, please." ([N.T. 12/3/25] at 54)[.]
>
> "We're going to do things out of order. You're going to start cross." (N.T. 12/3/25 at 57-58).
>
>        ***
>
> [The Court]: "It is not your turn to continue to testify, because your testimony is closed at this point." (*Id.* at 74)
>
> [Husband]: "Before she cross-examine[d] me, I wasn't done presenting all of the evidence that I have." (*Id.*).

*Id.*

Husband fails to establish any procedural due process violation. He bases his argument on statements in isolation. When viewed in context, it is plain that no violation occurred. Before the court stated that it was speaking to Wife's counsel, the court inquired with Husband about what form of child custody he would be requesting. *See* N.T. at 48-51. The court then asked Husband if he shared his exhibits with Wife's counsel, and he responded that he did not. *Id.* at 51. The court went to recess to allow Husband to do so. *Id.*

at 51-52. When the court returned, it asked counsel if she had any objections to the exhibits. It was during the court's discussion with Wife's counsel about objections to the exhibits that Husband started speaking, and the court interrupted Husband and explained that it was speaking with counsel.

> The Court: What is your position regarding utilizing a cell phone video in the proceeding?
>
> [Counsel]: I'm not sure that the first video is relevant. It's the recording of his work meeting. I wouldn't object to him showing it to the Court, necessarily, because I don't think it shows anything.
>
> The Court: Okay.
>
> [Counsel]: But I don't think it demonstrates exactly what he thinks.
>
> The Court: Did you see the second one at all?
>
> [Counsel]: I only saw the very first moment of it. I'm sorry.
>
> The Court: Go ahead and show it to her while I'm right there. I'll just note for the record [Husband is] pulling his phone out for the video.
>
> (Video playing.)
>
> [Counsel]: She didn't lock the door.
>
> [Husband]: She did.
>
> The Court: Don't argue about the evidence. I'm only wanting you to look at it, Counsel.
>
> [Counsel]: I'm sorry.
>
> The Court: So that you can formulate if you have any objections. So I'm going to ask you again to turn your phone off. You don't have to shut it all the way down, just make sure it's silent.
>
> **[Husband]: Your Honor, I didn't - -**

> **The Court: No, I'm in the middle of asking a question of counsel, so if you can allow me to finish that, please.**
>
> **[Husband]: All right.**

*Id.* at 53-54.

Next, when the court spoke of doing "things out of order," it was in reference to the admission of the video evidence for the court's viewing. ***See id.*** at 57.

> [Counsel]: I don't have any evidentiary objection to the video.
>
> The Court: Okay. I just have the problem with - - if you don't object then I guess it could come in. I'm just concerned that you need to cross-examine him.
>
> [Counsel]: Right.
>
> The Court: You may be calling your client, I don't know. But we can try to get both videos up on the screen. So that's a process. Why don't we do this. **We're going to do things out of order.**
>
> You're going to start cross and then Ms. Dowling will work on the video, on our end of the videos. So go ahead counsel.

*Id.* at 56-57.

Additionally, immediately after Husband informed the court that he "wasn't done presenting all of the evidence," the court asked, "What other evidence do you have?" ***Id.*** at 74. Husband stated that he had another video, and the court asked Husband to write a list of all the other evidence he wished to present. ***Id.*** at 75. After reviewing the list, Husband told the court that he was resting his case. ***Id.*** at 79. The court responded, "I want you to take a moment, look at the papers in front of you, look at your list and see if there's

anything else that you think, to the best of your ability if you understand the Rules of Evidence, that might be relevant." *Id.* Husband reviewed the list and again stated, "I will rest at this point, Your Honor." *Id.* The court inquired a final time whether Husband wished to rest his case, and he replied, "Yes, ma'am." *Id.* at 80-81. This claim lacks merit.

Next, Husband argues that the court erred in excluding the cell phone video footage and 911 recording. Husband maintains that both pieces of evidence were "highly probative." Husband's Br. at 22. He argues that the 911 call was admissible under the present sense impression or excited utterance exceptions to the hearsay rule. *See id.* (citing Pa.R.E. 803(1), (2)). He also argues that the "bathroom video was offered to document whether [Wife] physically blocked [Husband's] exit, which was central to the abuse allegations." *Id.*

The admission or exclusion of evidence is within the discretion of the trial court, and this Court will not reverse the decision of the court absent an abuse of discretion. *Commonwealth v. Smith*, 47 A.3d 862, 865 (Pa.Super. 2012).

To the extent Husband argues that the 911 recording was admissible under the aforementioned hearsay exceptions, this argument is waived because he did not raise either exception before the trial court. *See E.K. v. J.R.A.*, 237 A.3d 509, 522-23 (Pa.Super. 2020) (finding claim waived where appellant failed "to make a contemporaneous specific objection at the PFA hearing").

Regarding the video evidence, the court determined that Wife did not give consent to being recorded, and the admission of the video would be in violation of the Wiretap Act. *See* N.T. at 78-79; 18 Pa.C.S.A. §§ 5701-5782.

"In general, the Wiretap Act prohibits the interception, disclosure or use of any wire, electronic or oral communication," unless an exception applies. ***Commonwealth v. Byrd***, 235 A.3d 311, 319 (Pa. 2020) (citation and internal quotation marks omitted); ***see*** 18 Pa.C.S.A. § 5704. One such exception is "where all parties to the communication have given prior consent to such interception." 18 Pa.C.S.A. § 5704(4). The Wiretap Act defines oral communication as "oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S.A. § 5702. It further provides that "no person shall disclose the contents of any wire, electronic or oral communication, or evidence derived therefrom, in any proceeding in any court, board or agency of this Commonwealth." 18 Pa.C.S.A. § 5721.1(a)(1).

Under the Wiretap Act, the question is "whether the speaker had a specific expectation that the contents of the discussion would not be intercepted, and whether that expectation was justifiable under the existing circumstances." ***Agnew v. Dupler***, 717 A.2d 519, 523 (Pa. 1998). It is settled that a resident of a home has a reasonable expectation of privacy. ***See*** ***Commonwealth v. Kurtz***, 348 A.3d 133, 141 (Pa. 2025) (stating "[t]he home stands as the most essential bastion of privacy recognized by the law") (citation and internal quotation marks omitted).

The court committed no error in excluding the video in accordance with the Wiretap Act. The recording occurred in Husband and Wife's marital residence, and there was no testimony that Wife did not live in the residence. Husband also affirmed that Wife did not give consent to be recorded. Thus, Wife had a reasonable expectation of privacy, and the unconsented recording of the incident was inadmissible under the Wiretap Act. Furthermore, Husband did not raise any exception before the trial court that would allow for the admission of the recording.

Next, Husband claims that the court's dismissal of his petition "was based on a court-created evidentiary gap[.]" Husband's Br. at 24. He references his argument that the court "curtailed [his] testimony and excluded corroborating video recordings[.]" *Id.* at 23. Having determined that the court did not err in excluding the recordings and did not limit Husband's testimony, we conclude that this claim is meritless.

For his final issue, Husband alleges that the court failed to address his motion to correct the PFA hearing transcript. Husband has waived this issue by failing to include it in his Rule 1925(b) statement. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"); Rule 1925(b) Statement.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

8/14/2026